**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JUANITA L. MORGAN,

      Plaintiff,

v.

Case No. 05-74049
Hon. Gerald E. Rosen

DAIMLERCHRYSLER WARREN TRUCK
PLANT, UAW LOCAL 140, MARRIEO ESTERS,
and DR. STUART FENTON,

      Defendants.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on   <u>March 27, 2008</u>

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

## I. INTRODUCTION

Plaintiff Juanita L. Morgan, proceeding *pro se,* commenced this suit in this Court on October 21, 2005, alleging that her former employer, Defendant DaimlerChrysler Corporation,[1] unlawfully discharged her, and that her former bargaining representative, Defendant UAW Local 140, failed to properly challenge and secure the reversal of this unlawful discharge. Also named as defendants are Marrieo Esters, a former co-worker,

---

[1] Although Plaintiff named a particular plant, the Warren Truck Plant, as a defendant, it is clear that DaimlerChrysler was her employer.

and Dr. Stuart Fenton, a psychiatrist who conducted an independent medical examination of Plaintiff. Although the legal theories and claims advanced in Plaintiff's complaint are far from clear, this Court's subject matter jurisdiction rests upon Plaintiff's apparent assertion of hybrid breach-of-contract and duty of fair representation claims under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).

By motions filed on June 29, 2007, Defendants DaimlerChrysler and UAW Local 140 seek summary judgment in their favor on Plaintiff's hybrid § 301 claims. DaimlerChrysler contends that Plaintiff's claims are time-barred and that, in any event, she has failed to establish any breach of the collective bargaining agreement ("CBA") that governed her employment. UAW Local 140 also argues that there is no evidence of a breach of the CBA, and further contends that, as a matter of law, it did not breach its duty of fair representation. Both DaimlerChrysler and UAW Local 140 further contend that Plaintiff's claims should be dismissed for lack of exhaustion of her internal union remedies. Apart from these motions, Defendant Marrieo Esters has filed a December 26, 2006 motion to dismiss or for summary judgment, and Defendant Stuart Fenton has filed a December 5, 2006 motion to dismiss or for summary judgment.

Each of these motions has been fully briefed by the parties. Having reviewed the parties' submissions in support of and opposition to Defendants' motions, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will

decide Defendants' motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that these motions should be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Juanita L. Morgan is a former employee of Defendant DaimlerChrysler Corporation. She was hired by the company on August 6, 1999 as an hourly assembly employee, and assigned to the Warren Truck Assembly Plant. Plaintiff's employment at the plant was governed by a collective bargaining agreement ("CBA") between DaimlerChrysler and Plaintiff's bargaining representative, Defendant UAW Local 140.

On October 22, 2003, Plaintiff was examined by Kathleen Ransome of Henry Ford Behavioral Health, who recommended that Plaintiff remain off work until at least November 10, 2003. She was placed on sick leave, and advised that she would not be permitted to return to work until her doctor determined that she was able to do so.

On October 31, 2003, while Plaintiff remained off work, one of her co-workers, Defendant Marrieo Esters, complained to a labor relations representative that Plaintiff was harassing him by placing repeated calls to his cell phone despite his request that she stop. In her deposition testimony in this suit, Plaintiff has denied harassing Esters, and instead has charged that he lied about this matter, filed a false report with their employer, and repeated his false allegations of harassment to co-workers at the plant. Plaintiff testified that she told a union representative about Esters's false allegations, but that she did not raise the matter with DaimlerChrysler management.

3

On November 18, 2003, Plaintiff received medical clearance to return to work. She returned to work on November 24, 2003, but was instructed by a union relations representative, Rebecca Sand, that she was to have no contact with Esters, and that she should contact union relations and the union if she had any further problems with Esters or any other co-worker.

In late April of 2004, three of Plaintiff's co-workers went to labor relations with complaints of Plaintiff's bizarre behavior at the plant. Following an April 29, 2004 meeting with union and company representatives, Plaintiff was placed on sick leave and told to seek treatment with her doctor. When she returned to the plant on May 5, 2004 and sought reinstatement to work, she was sent to the plant's medical department for evaluation by a company physician, Dr. Zimmerman. Dr. Zimmerman concluded that Plaintiff was not fit to work in light of her psychological condition,[2] and she was placed on medical leave and escorted from the plant.[3]

In early September of 2004, Plaintiff was instructed to report to the plant to address the possibility of reinstatement. Because she and the company doctor disagreed regarding her ability to return to work, Plaintiff was referred for an independent medical

---

[2]This assessment was echoed by Plaintiff's own physician, Dr. Renee Dwaihy, in a record dated May 19, 2004, shortly after Dr. Zimmerman's evaluation. Specifically, Dr. Dwaihy stated that her initial evaluation of Plaintiff had led her to "suspect[] some type of personality pathology or perhaps a somatization disorder," and that more recent encounters had suggested the possibility of "paranoia" or "an Axis I disorder." (DaimlerChrysler's Motion, Ex. L.) Thus, Dr. Dwaihy planned to encourage Plaintiff to pursue psychiatric evaluation and treatment.

[3]Plaintiff has not returned to work since that date.

examination ("IME") by a psychiatrist, Defendant Stuart Fenton. Dr. Fenton conducted this examination on September 23, 2004, and concluded in a lengthy report that "[o]bviously, this lady is not fit to return to duty," where she "suffer[ed] from a severe emotional illness" and required "psychotherapy, perhaps even hospitalization, and certainly antipsychotic and antidepressant medication." (DaimlerChrysler's Motion, Ex. O, 9/23/2004 Report at 6.)[4]

Pursuant to the CBA, Dr. Fenton's determination was "final and binding" on Plaintiff, her employer, and the union. (DaimlerChrysler's Motion, Ex. N, CBA § 53(a).) Accordingly, by letter dated October 29, 2004, a DaimlerChrysler union relations representative informed Plaintiff that her medical leave had been extended through April 27, 2005, at which point she would be reexamined "unless [she] proceed[ed] with the recommendations of Dr. Fenton" that she obtain "active psychiatric care" and be placed "on appropriate medication." (DaimlerChrysler's Motion, Ex. P.)

Plaintiff understood that her return to work was contingent upon obtaining the

---

[4]Again, this assessment was consistent with the opinions of outside physicians who examined Plaintiff at around the same time. In a report following Plaintiff's September 16, 2004 office visit, Dr. Saba Ansari of Henry Ford Hospital opined that Plaintiff "has an undiagnosed paranoid schizoaffective disorder which will need to be adequately treated," and she stated that she had advised Plaintiff that "the only way that I could render any meaningful help to her would be to work in conjunction with Psychiatry." (Local 140's Motion, Ex. 29.) Following this visit, Plaintiff was seen by a psychiatrist, Phillip J. Lanzisseri, Ph.D., whose September 17, 2004 report diagnosed Plaintiff as suffering from "Paranoid Schizophrenia vs Delusional Disorder" and recommended antipsychotic medication, but noted that she had "refuse[d] treatment or further contact at this time." (Local 140's Motion, Ex. 28.) At her deposition, Plaintiff acknowledged that she had seen Dr. Lanzisseri, that he would not clear her for a return to work, that he had recommended that she take medication, but that she had refused to do so.

5

necessary medical clearance. (See Plaintiff's Dep. at 139.) Moreover, she has acknowledged that union officials advised her at the time to obtain treatment and secure the necessary medical approval for return to work, at which point the union would be able to help her. (See id. at 18, 125-26, 148, 170.) Yet, she did not seek treatment, but instead attempted to find a doctor who would confirm her own view that she was fit to return to work. On November 30, 2004, for example, she returned to Dr. Ansari to seek a medical clearance to return to work, but the doctor declined this request, noting Plaintiff's refusal to "acknowledge that she may have a psychiatric disorder," and opining that "[w]riting a letter stating that she is OK from an internal medicine point of view is not representative of the patient." (Local 140's Motion, Ex. 20.)

Ultimately, Plaintiff was able to secure a physician's note attesting to her lack of physical disabilities that would preclude a return to work. Specifically, she was seen by Dr. Betty Prihar on December 13, 2004, telling the doctor that she wanted a physical examination and that she would then be "going to behavioral health to talk to them." (Local 140's Motion, Ex. 21.) At the conclusion of her report, Dr. Prihar stated that Plaintiff was "given a letter to state that her physical examination was normal," but was also informed "that she will need to go back to Psychiatry to get her diagnosis and whether she needs any treatment for that." (Id.)[5]

---

[5] Plaintiff confirmed at her deposition that she was aware that Dr. Prihar "was internal medicine" and could not address any psychiatric conditions, and she instructed the doctor not to address this matter in her letter. (Plaintiff's Dep. at 30-31.)

Armed with this letter from Dr. Prihar,[6] Plaintiff returned to the plant in mid-December of 2004 to seek her reinstatement. In a letter dated December 16, 2004, however, a DaimlerChrysler union relations representative informed Plaintiff that she would remain on medical leave, explaining that the letter from Dr. Prihar failed to demonstrate that she had complied with Dr. Fenton's recommendations regarding psychiatric treatment and appropriate medication. (See DaimlerChrysler's Motion, Ex. T.)[7]

Angered by her employer's refusal to reinstate her, Plaintiff decided to resign. (See Plaintiff's Dep. at 144-45.) Upon being told that this decision should be in writing, Plaintiff prepared and submitted a December 16, 2004 letter stating that she had resigned as a DaimlerChrysler employee. (See DaimlerChrysler's Motion, Ex. Y.) She testified at her deposition that she understood that her resignation was voluntary, and that, by submitting this letter, she was terminating her employment. (See Plaintiff's Dep. at 146-47.)

Based on these events, Local 140 pursued three grievances on Plaintiff's behalf, challenging (i) the initial placement of Plaintiff on medical leave in May of 2004, (ii) the

---

[6]This letter states in its entirety: "Juanita Morgan had a physical exam in our office today. It is normal." (Local 140's Motion, Ex. 5.)

[7]Again, contemporaneous medical records indicated that Plaintiff's psychiatric problems were continuing, but that she still declined treatment. Specifically, in a December 22, 2004 report, Dr. Gabriella Geiszt diagnosed Plaintiff as suffering from a delusional disorder, but noted that she had "strongly refuse[d] medication[,] treatment or further participation in treatment." (Local 140's Motion, Ex. 22.)

7

December 16, 2004 denial of Plaintiff's request for reinstatement, and (iii) DaimlerChrysler's acceptance of Plaintiff's letter of resignation. The union processed each of these grievances through step three of the grievance process, but the company denied all of the grievances. In letters dated March 30, 2005 and July 26, 2005, Local 140 informed Plaintiff that it would not pursue these grievances through the remaining steps of the grievance procedure, but instead had decided to withdraw the grievances without prejudice. Plaintiff conceded at her deposition that she has no evidence that the union withdrew these grievances for any improper reason — in fact, she testified that she has "no idea" why the grievances were withdrawn. (Plaintiff's Dep. at 247.)[8]

Apart from these grievances, Plaintiff has filed three unfair labor practice charges against Local 140 with the National Labor Relations Board ("NLRB"), asserting essentially the same claims advanced in her complaint in this case. Each of these charges has been dismissed, and the NLRB also has denied Plaintiff's appeal from one of these dismissals. In dismissing the two charges in which Plaintiff complained that Local 140 had breached its duty of fair representation, the NLRB concluded that there was no evidence that Local 140's withdrawal of Plaintiff's grievances was based upon unlawful considerations. (See Local 140's Motion, Ex. 15 (10/11/2005 Dismissal); Ex. 25

---

[8]Under the UAW Constitution, Plaintiff had the right to pursue an internal union appeal of Local 140's decision to withdraw the three grievances submitted on her behalf. She did not do so, however, and the 60-day period for such an appeal has expired. The UAW Constitution further states that such internal union remedies must be exhausted before seeking relief in court. (See Local 140's Motion, Ex. 17, UAW Const. art. 33, § 5.)

(1/11/2007 Dismissal).)[9]

Plaintiff then commenced this suit on October 21, 2005. It appears from her *pro se* complaint and deposition testimony that she is asserting a claim of unlawful discharge, a claim that Local 140 breached its duty of fair representation, and perhaps also a claim of defamation or slander. Plaintiff testified at her deposition, however, that she is not asserting any sort of discrimination or harassment claim in this case. (See Plaintiff's Dep. at 42, 175, 378.)

## III. ANALYSIS

### A. The Standards Governing Defendants' Motions

Through their present motions, Defendants seek summary judgment in their favor on Plaintiff's hybrid § 301 claims, as well as any other claims she arguably has asserted in her *pro se* complaint. Under the relevant Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[10]

Three 1986 Supreme Court cases — Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986),

---

[9]Plaintiff apparently has also contacted other state and federal agencies and officials regarding her complaints of mistreatment, but to no avail.

[10]Although certain of the Defendants have moved in the alternative for dismissal under Fed. R. Civ. P. 12(b)(6), the Court has considered materials outside the pleadings in addressing these motions, and thus will decide the motions in accordance with the standards of Rule 56. See Fed. R. Civ. P. 12(d).

9

and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) — ushered in a "new era" in the federal courts' review of motions for summary judgment. These cases, in the aggregate, lowered the movant's burden in seeking summary judgment. The Celotex Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit adopted a series of principles governing motions for summary judgment. These principles include:

> * Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989); see also Nernberg

v. Pearce, 35 F.3d 247, 249 (6th Cir. 1994). The Court will apply these principles in resolving Defendants' motions.

B.  **Plaintiff Has Failed to Identify Any Evidence in Support of Her Hybrid Breach-of-Contract and Duty of Fair Representation Claims under the LMRA.**

Although it is not entirely clear what claims Plaintiff means to assert in this case, the gravamen of her complaint is that she was unlawfully discharged by Defendant DaimlerChrysler without a proper basis, and that Defendant Local 140 breached its duty of fair representation by failing to secure her reinstatement to work. In seeking summary judgment in their favor on these claims, DaimlerChrysler and Local 140 argue that Plaintiff's complaint is properly construed as asserting hybrid breach-of-contract/duty of fair representation claims under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and that she has failed as a matter of law to establish either of the two elements of such claims. The Court agrees.

A hybrid suit brought under § 301 of the LMRA "implicates the interrelationship among a union member, his union, and his employer." Vencl v. International Union of Operating Eng'rs, Local 18, 137 F.3d 420, 424 (6th Cir. 1998). To prevail against her union, Plaintiff must prove "both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." 137 F.3d at 424. The Sixth Circuit has further explained:

> If the union member fails to prove that the union breached its duty, he will, obviously, recover nothing from the union. If the union member fails to prove that the employer breached the collective bargaining agreement, he

> also will recover nothing, because the union member's grievance would have failed regardless of the union's representation.

137 F.3d at 424. Likewise, this same two-pronged test governs Plaintiff's claim against her former employer. Roeder v. American Postal Workers Union, 180 F.3d 733, 737 (6th Cir. 1999). No liability attaches to either DaimlerChrysler or Local 140 unless both elements of this test are satisfied. 180 F.3d at 737; see also Kaiser v. United States Postal Service, 785 F. Supp. 648, 658-59 (E.D. Mich. 1992) (discussing the interdependency of an employee's § 301 claims against her employer and her union).

Turning first to the conduct of Local 140, to determine whether this union local breached its duty of fair representation in this case, the Court must consider "whether the Union's conduct in representing [Plaintiff] was arbitrary, discriminatory, or in bad faith." Roeder, 180 F.3d at 737. The Sixth Circuit has cautioned that "[m]ere negligence on the part of a union does not satisfy this requirement." 180 F.3d at 737. Rather, "[f]or liability to attach, a union's conduct must be so far outside a wide range of reasonableness as to be irrational." 180 F.3d at 737 (internal quotation marks and citation omitted). More specifically, where, as here, a union member faults her local for declining to pursue a grievance through all available steps of the grievance process, the union's determination is "accorded a wide range of reasonableness," and will not be deemed a breach of the duty of fair representation unless the union has "arbitrarily ignored" the grievance or handled it in a "perfunctory fashion." White v. Detroit Edison Co., 472 F.3d 420, 426-27 (6th Cir. 2006) (internal quotation marks, alteration, and citations omitted).

There is simply no evidence in this case that Local 140 acted arbitrarily or in bad faith in electing not to pursue Plaintiff's grievances beyond step three of the grievance process. According to the affidavit of Local 140 official Larry Williams, in deciding not to pursue these grievances, he and other union officials "made a judgment that because [Plaintiff] had repeatedly refused treatment and continued to insist that there was nothing wrong with her, it would be difficult, if not impossible, to prevail in arbitration because she was so uncooperative, and the Union would exhaust a great deal of time, effort and money with little or no likelihood of success." (Local 140's Motion, Ex. 27, Williams Suppl. Aff. at ¶ 10.) More generally, Mr. Williams states in his affidavit that the grievances were filed "to try to buy time in the hope that [Plaintiff] would eventually seek treatment which would produce medical documentation that she was mentally fit to return to work," but that this effort proved unavailing when Plaintiff was unwilling to obtain treatment. (Id. at ¶ 11.)

Against this evidence of reasonable decisionmaking, Plaintiff has not identified any basis in the record for concluding that Local 140 acted arbitrarily or in bad faith. Indeed, she conceded at her deposition that she has no evidence that the union withdrew the grievances filed on her behalf for any improper reason. (Plaintiff's Dep. at 247.) Neither does the record otherwise lend any support to the proposition that Local 140 ignored Plaintiff's complaints or handled her grievances in a perfunctory fashion. To the contrary, Plaintiff has acknowledged that union representatives advised her that she needed to secure the necessary medical clearance in order to return to work, and that she

13

could best achieve this objective by seeking treatment for the psychiatric condition that had resulted in her medical leave. And, of course, Local 140 filed three grievances on Plaintiff's behalf, and pursued each of them through step three of the grievance process. Under this record, the Court finds as a matter of law that Plaintiff cannot establish a breach of the duty of fair representation.

Having addressed the duty of fair representation prong of the two-part standard for hybrid § 301 claims, the Court next turns to the breach-of-contract element of this test. More specifically, to determine whether DaimlerChrysler breached the CBA by placing Plaintiff on medical leave, refusing to reinstate her, or accepting her resignation, the Court must "look to the plain meaning of the agreement." Roeder, 180 F.3d at 737. As to the initial placement of Plaintiff on medical leave in May of 2004, the company took this action following (i) the complaints of three co-workers about Plaintiff's bizarre behavior, (ii) a meeting between Plaintiff and union and company representatives regarding this behavior, and (iii) an evaluation by the plant doctor, Dr. Zimmerman, who concluded that Plaintiff was not fit to work in light of her psychological condition. While she plainly does not agree with Dr. Zimmerman's assessment, Plaintiff does not, and cannot, dispute that these considerations provided a sufficient basis for placing her on medical leave, and that no CBA provision prohibited this course of action. Moreover, with regard to the factual predicate for DaimlerChrysler's determination, Plaintiff has not identified any medical evidence that might refute Dr. Zimmerman's assessment that she was unfit for work.

Similarly, while Plaintiff strenuously disagrees with the conclusions reached by Dr. Fenton following his September 23, 2004 independent medical examination, she cannot show that DaimlerChrysler breached any term of the CBA by relying on this IME in refusing to reinstate her. Rather, the terms of the CBA expressly permitted — and, indeed, required — DaimlerChrysler to defer to the results of this IME in determining whether Plaintiff was eligible to return to work. (See DaimlerChrysler's Motion, Ex. N, CBA § 53(a).) And, once again, Plaintiff has not produced any medical evidence that might call Dr. Fenton's evaluation into question, despite her repeated efforts to obtain a physician's opinion that she was mentally fit to return to work.

Finally, Plaintiff cannot establish any breach of the CBA by virtue of DaimlerChrysler's acceptance of her resignation. There is no evidence that the company solicited this resignation, or that it engaged in any sort of coercive conduct or sought to induce Plaintiff's resignation through promises or otherwise. To the contrary, Plaintiff testified at her deposition that she made the decision to resign, and that she understood that her resignation was voluntary. (See Plaintiff's Dep. at 144-47.) Nothing in the CBA prohibited DaimlerChrysler from accepting this voluntary resignation.

Nor is there any basis in the record for viewing Plaintiff's resignation as tantamount to a constructive discharge. As the Sixth Circuit has explained, "a constructive discharge exists if working conditions are such that a reasonable person in the plaintiff's shoes would feel compelled to resign." Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1127 (internal quotations and citation omitted). There is no evidence

15

that Plaintiff's decision to resign was triggered by any alteration of her working conditions. Rather, as she testified, her decision was the product of her frustration that DaimlerChrysler refused to reinstate her. (See Plaintiff's Dep. at 144.) Yet, as explained, the company's refusal was dictated by the results of Dr. Fenton's IME, which were binding upon Plaintiff and DaimlerChrysler alike under the express terms of the CBA. Accordingly, Plaintiff has failed as a matter of law to establish a breach of the CBA.

The Court understands and appreciates Plaintiff's desire to return to work. Yet, she was repeatedly told what she must do in order to be reinstated from medical leave, and she failed to heed this advice. As a result, DaimlerChrysler did not breach the CBA by refusing to reinstate Plaintiff and accepting her resignation, and Local 140 did not breach its duty of fair representation by withdrawing the grievances it filed on Plaintiff's behalf after step three of the grievance process. It follows that DaimlerChrysler and Local 140 are entitled to summary judgment in their favor on Plaintiff's hybrid § 301 claims.[11]

## C.    Plaintiff's Claims Against Defendant Esters Either Lack a Legal Basis or Are Time-Barred.

Having addressed the claims that are the principal focus of Plaintiff's complaint, the Court now turns to the remaining claims that are or may be asserted in this pleading.

---

[11]In light of the Court's determination that Plaintiff has failed to satisfy either prong of the two-part standard governing hybrid § 301 claims, the Court need not consider whether, as Local 140 argues, these claims should be barred by virtue of Plaintiff's failure to exhaust her internal union remedies. Nor does the Court decide whether, as DaimlerChrysler contends, Plaintiff's claims are time-barred under a six-month limitation period contained in her employment application.

First, as to Defendant Marrieo Esters, there is no basis for charging him with liability for any hybrid § 301 claim, where he plainly was not a party to the CBA between DaimlerChrysler and the union, and where he was not an agent, official, or representative of Local 140, but was merely Plaintiff's co-worker.[12] To the extent that Plaintiff's complaint suggests that Esters engaged in some form of discrimination or harassment, Plaintiff testified at her deposition that she is not asserting any such claim in this case.

Finally, to the extent that Plaintiff means to assert a claim of defamation against Defendant Esters,[13] any such claim is time-barred under the applicable one-year statute of limitations for bringing such claims. See Mich. Comp. Laws § 600.5805(9). The sole reference to Esters in the complaint concerns an action he allegedly took in 2003. Moreover, the latest possible date of any workplace defamation by co-worker Esters would have been May 5, 2004, Plaintiff's last day on the job.[14] Plaintiff commenced this action over one year later, in October of 2005. Thus, any defamation claim is time-barred.[15]

---

[12] And, of course, the Court already has held that Plaintiff's hybrid § 301 claim fails as a matter of law.

[13] This appears to be the most plausible reading of the complaint, and this interpretation seemingly is confirmed by Plaintiff's response to Defendant Esters's motion, which refers first and foremost to Esters's "Defamation of Plaintiff Morgan." (See Plaintiff's 8/27/2007 Response at 2.)

[14] While Plaintiff testified at her deposition to further interactions with Esters after this date, these encounters occurred outside the workplace and have no conceivable relevance to any claims asserted by Plaintiff in this case.

[15] In her submissions to the Court, Plaintiff seemingly suggests that she can avoid the bar of the statute of limitations by pointing to the lingering effects of Esters's alleged defamation

**D.     Plaintiff Has Failed to State a Viable Claim Against Defendant Fenton.**

Plaintiff's claims against Defendant Fenton appear to be based upon the allegation that his purportedly mistaken evaluation of Plaintiff as unfit to return to work and as suffering from severe emotional illness resulted in the loss of her job. In seeking dismissal or summary judgment as to any claims that Plaintiff might be asserting against him, Defendant Fenton argues that any such claims are defeated by the ruling and reasoning of the Michigan Supreme Court in Dyer v. Trachtman, 470 Mich. 45, 679 N.W.2d 311 (2004). The Court agrees.

In Dyer, 679 N.W.2d at 317, the Michigan Supreme Court held that claims arising from the actions of a physician while performing an independent medical examination ("IME") are grounded in the law of medical malpractice, and not ordinary negligence. In so ruling, the Court emphasized that the relationship that exists during an IME is not a "traditional" physician/patient relationship, but instead is more limited. 679 N.W.2d at 314. More specifically, the Court stated that "[t]he IME physician, acting at the behest of a third party, is not liable to the examinee for damages resulting from the conclusions the physician reaches or reports." 679 N.W.2d at 314-15. Instead, "[t]he limited relationship that we recognize imposes a duty on the IME physician to perform the examination in a manner not to cause physical harm to the examinee." 679 N.W.2d at 315. Moreover, any

---

that extended into the one-year period before she brought this suit. Yet, Michigan law is clear that the continuing harmful effects of a discrete tortious act do not extend the period for filing a suit based upon this act. See, e,g,, Jackson County Hog Producers v. Consumers Power Co., 234 Mich. App. 72, 592 N.W.2d 112, 116 (1999).

18

claim arising from a breach of this limited duty is governed by the Michigan statutory provisions that apply to medical malpractice suits. 679 N.W.2d at 317.

Dyer forecloses any possible recovery in this case against Dr. Fenton. First, since he performed an IME at the behest of a third party, DaimlerChrysler, he cannot be held liable to Plaintiff for any damages resulting from his conclusions that Plaintiff suffered from severe emotional illness and was unfit to return to work. Dyer, 679 N.W.2d at 314-15. Next, to the extent that Plaintiff alleges that Dr. Fenton inflicted physical harm during the course of the IME,[16] Dyer instructs that any such claim would be governed by the Michigan statutory provisions applicable to medical malpractice suits, including the statutory requirements that no such suit may be commenced absent pre-suit notice and an affidavit of merit accompanying the complaint. See Mich. Comp. Laws §§ 600.2912b(1), 600.2912d(1). Plaintiff has not satisfied either of these statutory prerequisites, and the time for doing so has expired. See Mich. Comp. Laws § 600.5805(6) (establishing a two-year period of limitation for medical malpractice claims); Scarsella v. Pollak, 461 Mich. 547, 607 N.W.2d 711, 715 (2000) (holding that the filing of a medical malpractice suit does not toll the statute of limitations if the complaint is unaccompanied by the required affidavit of merit). Consequently, Defendant Fenton is entitled to summary judgment in his favor as to the claims asserted against him in this case.[17]

---

[16]It should be noted that no such allegation is made in Plaintiff's complaint. Nor does the record include any evidence of such harm.

[17]As noted by DaimlerChrysler, Plaintiff's complaint could also be construed as asserting a claim under Michigan's Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws §

19

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant DaimlerChrysler Corporation's June 29, 2007 motion for summary judgment is GRANTED. IT IS FURTHER ORDERED that Defendant Local 140's June 29, 2007 motion for summary judgment also is GRANTED.[18] IT IS FURTHER ORDERED that Defendant Fenton's December 6, 2006 motion to dismiss or for summary judgment also is GRANTED. IT IS FURTHER ORDERED that Defendant Esters's December 26, 2006 motion to dismiss or for summary judgment also is GRANTED. Finally, IT IS FURTHER ORDERED that Plaintiff's May 29, 2007 motion for settlement is DENIED.

            s/Gerald E. Rosen
            Gerald E. Rosen
            United States District Judge

Dated: March 27, 2008

I hereby certify that a copy of the foregoing document was served upon Juanita Morgan and counsel of record on March 27, 2008, by electronic and/or ordinary mail.

            s/LaShawn R. Saulsberry
            Case Manager

---

423.501 *et seq.* Yet, any such claim cannot survive summary judgment, where Plaintiff admitted at her deposition that she received a copy of her personnel file before she left the company's employ.

[18] In light of this ruling, an earlier summary judgment motion filed by Local 140 on June 29, 2006 is DENIED AS MOOT.